FILED
CLERK

8/4/2022 4:25 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------X
JOHN W. KOWALCHUCK, JR.,

           Plaintiff,

    -against-

METROPOLITAN TRANSPORTATION
AUTHORITY,

           Defendants.
----------------------------------------X

**MEMORANDUM OF DECISION & ORDER**

17-CV-2146 (GRB)

**GARY R. BROWN, United States District Judge**:

    This action, brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 5l, *et seq.*, is set for a bench trial in several days. While the Court had earlier rejected a motion for summary judgment, in preparing for trial, matters have come to the Court's attention that reveal that that determination was in error, because based upon undisputed fact and recent appellate law, the plaintiff simply cannot prevail. While the Court could simply allow the matter to proceed to a short bench trial, such procedure would visit unjustified costs and encumbrances of travel and trial preparation upon the parties. In fact, in this case, there are specific burdens that would be worked upon plaintiff should trial proceed. *See* DE 29 (letter noting that plaintiff, who has to travel from North Carolina, has suffered a series of strokes, is a cardiac care patient, and faces enhanced COVID risks). Thus, while the Court regrets taking this action at the eleventh hour, the practical and evidentiary realities and common decency demand that the Court must reconsider its earlier determination and enter summary judgment in favor of defendant.

1

**UNDISPUTED FACTS**

The relevant, material undisputed (or ineffectually disputed) facts include the following: Plaintiff John Kowalchuk was hired by the LIRR – later becoming an MTA employee – as a police officer in 1996. DE 24-1 ¶ 3. He retired in 2016. ¶ 4. On January 27, 2015, Kowalchuk was assigned to desk duty at MTA's District 2 headquarters, working the 7:00 pm to 7:00 am shift. ¶ 11. It began snowing, and Kowalchuk started removing snow from the building's handicap access ramp. ¶ 14. He testified there was about 18" of snow on the ground. ¶ 16. He used a fiberglass shovel not designed for snow removal. ¶ 18.

Kowalchuk reports that, as he was pushing snow from the ramp, the shovel hit a raised board, which injured his shoulder. ¶¶ 20, 21. Photographs of the ramp, taken some months after the incident, show a board at the juncture where the sloped portion of the ramp meets where the platform section was warped. ¶ 41. As a result, the edge of the board is slightly raised, though the planks meet perfectly at the center of the ramp. ¶ 42. One of the photos supplied demonstrates that the height of the defect at its worst point is approximately equally to the thickness of a key fob, which measures 6/16":





¶¶ 41-42, p. 18 ¶ 2. As shown in the exhibit and the detail above, only a small portion of the board is raised. Other photos supplied in anticipation of trial demonstrate that the identified defect was slight and far off-center, inescapably showing that the ramp was fully functional for its intended use. *See* Defendant's Exhibit 1. There is no evidence that the MTA had notice of this defect, assuming it was a defect; indeed, plaintiff testified that during more than 100 visits to the headquarters, sometimes using the ramp, he neither noticed nor tripped over the board. ¶¶ 42-44.

## DISCUSSION

*Standard of Review*

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor,* 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz,* 643 Fed.Appx. 54 (2d Cir. 2016), which discussion is incorporated by reference herein**.** Within the last month, the Second Circuit, affirming the entry of summary judgment in a FELA case, issued a ruling particularly applicable to this matter:

> For the non-moving party to succeed, "there must be evidence on which the [court] could reasonably find" in the non-moving party's favor. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). "To defeat summary judgment, therefore, nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation." *Id.*
>
> FELA provides that any railroad engaging in interstate commerce "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. A plaintiff raising a FELA claim must prove the traditional common-law elements of negligence — duty, breach, foreseeability, and causation — though "the plaintiff's burden in making a showing of causation and negligence is lighter under FELA than it would be at common law." *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006). "The test is whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury." *Ulfik v. Metro-N. Commuter R.R.*, 77 F.3d 54, 58 (2d Cir. 1996). Still, "[w]hile there is a considerably more relaxed standard of proof for determining negligence in FELA cases and a strong federal policy in favor of letting juries decide these cases, FELA does not make an employer strictly liable for workplace injuries and, therefore, requires that claimants must at least offer some evidence that would support a finding of negligence." *Sinclair v. Long Island R.R.*, 985 F.2d 74, 76-77 (2d Cir. 1993).
>
> Under FELA, "[t]he touchstone of th[e] negligence inquiry is the issue of foreseeability — whether or not [the defendant] knew or should have known of the potential hazard." *Ulfik*, 77 F.3d at 58. To succeed on his FELA claim, [plaintiff] must show proof "of actual or constructive notice to the employer of the defective condition that caused the injury." *Sinclair*, 985 F.2d at 77.

*Batista v. Metro. Transportation Auth.*, 2022 WL 2442312, at *1–2 (2d Cir. July 5, 2022) (alterations omitted).

Here, there is absolutely no evidence of constructive or actual notice of a defect – even assuming this constitutes an actionable defect – to the defendant. Plaintiff's counsel has endeavored admirably to cobble together an argument that the MTA's failure to conduct ADA inspections of the ramp give rise to potential liability. This fails for several reasons. At a high level, under New York law, "proof of a violation of the ADA may only constitute evidence of negligence, not negligence per se." *Lugo v. St. Nicholas Assocs.*,

4

772 N.Y.S.2d 449, 455 (Sup. Ct. 2003), *aff'd*, 18 A.D.3d 341, 795 N.Y.S.2d 227 (2005); *see also Lettera v. Retail Prop. Tr.*, 2006 WL 196975, at *5 (E.D.N.Y. 2006) ("There is nothing in ADA, or in the interpretation of the statute by a New York court, that would suggest its draftsmen intended to depart from traditional negligence principles and impose a new statutory duty on building owners. Nor has the New York State Legislature seen fit to expand the scope of a building owner's duty beyond that of the common law in this respect.").

Yet there's more: while the failure to conduct an ADA inspection represents *some* evidence of negligence under certain circumstance, the focus here must be on the nature of that evidence. "[W]hether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury. Of course, in some instances, the trivial nature of the defect may loom larger than another element. Not every injury allegedly caused by an elevated brick or slab need be submitted to a jury." *Trincere v. Cnty. of Suffolk*, 90 N.Y.2d 976, 977 (1997) (internal quotation marks and citations omitted). Here, given the size[1] and nature of the defect – an extremely small differential near the edge of the ramp – the notion that an ADA inspection would have provided notice of the defect falls into the impermissible realm of "unsubstantiated speculation," which cannot defeat summary judgment. *Batista*, 2022 WL 2442312, at *1–2.

---

[1] The MTA argues that a defect of less than one inch, *per se*, represents an inactionable hazard, a notion that finds support in some cases. *See, e.g.*, *Natijehbashem v. United States*, 828 F. Supp. 2d 499, 506–07 (E.D.N.Y. 2011) (granting summary judgment because alleged defect of at most one inch between concrete and asphalt surface was "too trivial to be actionable as a matter of law"). The Court declines to adopt this blanket rule. *Trincere v. Cnty. of Suffolk*, 90 N.Y.2d at 977 ("There is no rule that municipal liability, in a case involving minor defects in the pavement, 'turns upon whether the hole or depression, causing the pedestrian to fall, is four inches—or any other number of inches—in depth.'") (citation omitted).

As such, I find that, on the undisputed facts, there is no competent evidence that could reasonably establish that defendant had actual or constructive notice of the operative defect. Therefore, the Court reconsiders its previous ruling, and must enter summary judgment in favor of defendant.

**CONCLUSION**

The Clerk of the Court is directed to enter judgment consistent with this Order and close the case.

**SO ORDERED.**

Dated: Central Islip, New York
　　　　August 4, 2022

　　　　　　　　　　　　　　　　　　　　　　　/s/ Gary R. Brown
　　　　　　　　　　　　　　　　　　　　　　　GARY R. BROWN
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge